IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JESSICA MAE BLEWITT, )
)
          Plaintiff, )
)
v. ) 1:21CV736
)
KILOLO KIJAKAZI, )
Acting Commissioner of Social Security, )
)
          Defendant. )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jessica Mae Blewitt ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income under Title XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed her application for Supplemental Security Income Benefits on September 3, 2019, alleging a disability onset date of May 17, 2014. (Tr. at 16, 158-64.)[1] Her applications were denied initially (Tr. at 71-88, 111-14) and upon reconsideration (Tr. at 89-110, 121-25). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (See Tr. at 127-52.) Plaintiff, along with her attorney and

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

an impartial vocational expert, attended the subsequent telephonic hearing on February 5, 2021. (Tr. at 16.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 31), and, on July 26, 2021, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1-6.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III.   DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Behcet's disease versus undifferentiated connective tissue disorder; fibromyalgia; asthma; anxiety disorder; depressive disorder; and attention deficit/hyperactivity disorder[.]

(Tr. at 18.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 20-23.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with extensive further limitations. Specifically, the ALJ found as follows

> [S]he requires a sit/stand option, allowing her to shift from a standing position to a seated position and/or to stretch at intervals of approximately 30 minutes, provided she does not leave the workstation and the shifting of positions results in her being off-task no more than 1-2 minutes with each position shift; she is incapable of climbing ladders, ropes, and scaffolds; she is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, kneeling, crouching, and crawling; she is capable of frequently handling, fingering, feeling, and grasping with the bilateral hands; she is capable of no

5

more than occasional exposure to extreme temperatures, humidity and wetness, slippery or uneven surfaces, vibrations, poorly ventilated areas, and pulmonary irritants, including noxious odors, fumes, dusts, and gases; she is incapable of performing work that involves the use of sharp objects, tools, or knives or requires any workplace exposure to blood or other bodily fluids; she is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; she is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; she is able to perform the mental demands of work that requires her to make workplace decisions and remember and apply commonsense understanding to carry out simple and detailed instructions and tasks consistent with occupations that can be learned over a period up to and including 6 months in a setting that is goal-oriented versus one requiring that she maintain a specified pace consistently throughout the workday (e.g., a conveyor belt or assembly line); she is able to sustain concentration and persist at simple and detailed tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday in a job that involves only occasional changes in the work setting; and she is capable of occasional interaction with the general public, co-workers, and supervisors but is incapable of performing tandem tasks or working in a team environment.

(Tr. at 23-24.) Based on this determination and the testimony of a vocational expert, the ALJ determined at step four of the analysis that Plaintiff's past relevant work exceeded her RFC. (Tr. at 29-30.) However, the ALJ found at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in significant numbers in the national economy. (Tr. at 30-31.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 31.)

Plaintiff now raises two challenges to the ALJ's decision. First, she argues that substantial evidence fails to support the ALJ's step two finding that Plaintiff's seizures and neuropathy were not medically determinable impairments. Second, Plaintiff contends that her the RFC "was substantially impeded by additional limitations, and thus, it was error to find that Plaintiff could perform such work." (Pl.'s Br. [Doc. #12] at 2.) Although the meaning of Plaintiff's second contention is not abundantly clear, she generally appears to argue that

6

substantial evidence fails to support the ALJ's RFC assessment. (See Pl.'s Br. [Doc. #12] at 7-8.)

A. Step two

At step two of the sequential analysis, the ALJ found that six of the impairments identified by Plaintiff significantly limited her ability to perform basic work activities, and therefore qualified as "severe" under the Act. (Tr. at 18.) The ALJ further found that Plaintiff's irritable bowel syndrome was "non-severe" and that five additional impairments—seizures/epilepsy, kidney stones, sarcoidosis, neuropathy, and peripheral arterial disease—were "non-medically determinable," meaning that there was no objective evidence documenting the diagnosis of, or treatment for, these conditions during the time period at issue. (Tr. at 18-20.) Plaintiff now contends that the ALJ erred in categorizing her seizures and neuropathy as non-medically determinable and in failing to consider these impairments at later steps of the sequential analysis.

In making this challenge, Plaintiff acknowledges, and even quotes, the ALJ's findings that Plaintiff's seizures were "a side effect from the prescription medication Wellbutrin, which she no longer takes." (Tr. at 18.) As noted by the ALJ, the primary reference in the record to seizures was as part of Plaintiff's medication history, and this problem is further listed as "resolved." (Tr. at 18.) Specifically, the ALJ found that:

> The claimant alleges seizures/epilepsy as a severely limiting impairment, but the medical evidence does not contain sufficient clinical findings or diagnostic studies to find a seizure disorder as a medically determinable impairment. Specifically, the medical evidence simply refers to seizures as part of the claimant's subjectively reported medication history, and the evidence shows the claimant reported her seizure activity was a side effect from the prescription medication Wellbutrin, which she no longer takes. (Exhibits 2F/21, 31, 73, 106, 150, 224, 3F/64, 72; 4F/2, 4, 27, 37, 43; 7F; 8F; 9F/7, 17; 10F/6, 14; 11F/12,

7

> 23; 12F/2, 8, 16). Furthermore, treatment records from the period at issue describe the claimant's history of seizures as "resolved." (Exhibit 3F//16, 17, 28, 29, 44, 45). Also, there are no records from a specialist such as a neurologist documenting diagnoses and treatment for a seizure disorder, and there are no diagnostic or laboratory studies such as a lumbar puncture, blood test, EEG, MRI, CT or PET scan documenting objective clinical signs of a seizure disorder. Finally, neither state agency medical consultant at the initial or reconsideration levels noted the presence of a seizure disorder in the evidence. (Exhibits 1A; 3A). As such, the claimant's reports and allegations of a severe seizure disorder are non-medically determinable.

(Tr. at 18-19.) Similarly, the ALJ noted that neuropathy was listed among Plaintiff's diagnoses on only one occasion, and no exam findings or testing established neuropathy as an impairment. (Tr. at 19.) The ALJ explained that:

> The claimant also alleges neuropathy as a severely limiting impairment, but the medical evidence shows that condition is largely self-reported, and there are no exam findings or testing such as EMG nerve conduction studies in the evidence establishing neuropathy as an impairment. (Exhibit 2F/188; 3F/2; 9F/1, 12, 13; 12F/4, 15). There is only one instance in December 2019 when a treatment provider listed neuropathy as a diagnoses, but per Social Security rules and regulations, a single diagnosis alone is insufficient to establish a medically determinable impairment, especially when, such as in this case, exam findings from that physician show the claimant's neurological evaluation was entirely normal. (Exhibits 9F/12-13; 12F/15-16). Neuropathy is therefore non-medically determinable.

(Tr. at 19.) In an effort to refute the ALJ's findings, Plaintiff argues that the ALJ was required to include both neuropathy and epilepsy as severe impairments at step two because they were included among the diagnoses listed by Plaintiff's treating Nurse Practitioner, Deanna Garmon, FNP, WHNP, when she completed a Physical Residual Functional Capacity Questionnaire supplied by Plaintiff's attorney. (Pl.'s Br. at 4); (Tr. at 820). However, the regulations clearly provide that a medically determinable impairment:

> must result from anatomical, physiological, or psychological abnormalities that <u>can be shown by medically acceptable clinical and laboratory diagnostic techniques</u>. Therefore, a physical or mental impairment must be established by

8

> objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s).

20 C.F.R. §§ 404.1521, 416.921 (emphasis added). Because Plaintiff was not entitled to rely on her own statements, a mere diagnosis, or Ms. Garmon's opinion to establish the existence of her neuropathy and epilepsy as impairments, particularly without corroborating objective evidence, her step two claim is without merit.

Moreover, any error in failing to include neuropathy and epilepsy at step two is harmless in any event because the ALJ did not stop at step two and instead proceeded to consideration of Plaintiff's claims based on a consideration of all of the evidence in the record. McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) ("As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless.") With respect to Plaintiff's claims regarding a past history of seizures, Plaintiff testified at the hearing that she could not drive or handle sharp objects. The ALJ considered all of the records, and even though nothing in the records reflected unresolved or ongoing seizures, the RFC limited Plaintiff to "no use [of] sharp objects" in the workplace, no driving as part of work duties, and no "work-related exposure to hazards, such as unprotected heights and unguarded moving machinery." (Tr. at 24, 26.)[4] Similarly with regard to Plaintiff's claims of a history of neuropathy, the ALJ considered all of the symptoms in the records as part of the evaluation of Plaintiff's fibromyalgia and undifferentiated

---

[4] In her filings, Plaintiff also alleged "memory loss due to seizures", but the ALJ discussed Plaintiff's alleged memory loss and found that Plaintiff performed well on memory and attention testing at the consultative examination. (Tr. at 22, 24, 27, 28, 29.)

9

connective tissue disorder, and Plaintiff has not pointed to any evidence that the ALJ failed to assess or consider.

Plaintiff also contends that the ALJ failed "to properly assess her subjective complaints of pain and fatigue," both of which she claims are supported by Ms. Garmon's medical opinion. (Pl.'s Br. at 5.) In making this claim, Plaintiff argues that "the ALJ applied an incorrect legal standard when he discounted her complaints as inconsistent with the objective medical evidence." (Pl.'s Br. at 5.) Plaintiff also contends that "substantial evidence does not support the ALJ's other findings related to [Plaintiff's] subjective complaints" (Pl.'s Br. at 5), but her brief includes no argument or evidence related to this assertion. Nevertheless, because Plaintiff raises at least a cursory substantive challenge to the ALJ's treatment of her subjective complaints, the Court will address this contention as well as her procedural challenge.

To the extent Plaintiff contends that the ALJ applied the incorrect legal standard, the applicable regulations and guidance provide that ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, [such as pain,] be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. The ALJ should not reject a claimant's statements "about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted

10

solely based on objective medical findings." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017); see also Arakas v. Commissioner, 983 F.3d 83, 96-97 (4th Cir. 2020). However, contrary to Plaintiff's argument in the case at hand, it is also undisputed that a plaintiff's "symptoms, including pain, will be determined to diminish [her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Thus, objective medical evidence and other evidence in the record are "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [the] ability to work" and "[a]lthough a claimant's allegations about . . . pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595); see also SSR 16-3p ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities . . . ."). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's

11

symptoms are less likely to reduce his or her capacities to perform work-related activities. . . .

SSR 16-3p.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered the medical evidence and other evidence of Plaintiff's impairments and limitations and explained that determination in the decision. Rather than explaining what, if any, additional functional limitations are required based on these records, Plaintiff simply asserts that evidence supports a finding of total disability under the Act, as opined by Ms. Garmon. (See Pl.'s Br. at 6-7.) However, as Defendant correctly notes, whether the ALJ could have reached a different conclusion based on the evidence is irrelevant. The sole issue before the Court is whether substantial evidence supports the ALJ's decision. See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). Because Plaintiff has not shown that the ALJ applied the incorrect standard in evaluating her statements, her first challenge fails.

Any substantive challenge proves equally unpersuasive. In terms of Plaintiff's subjective statements, the ALJ set out the reported symptoms in Plaintiff's testimony and disability report. He also presented the relevant regulations for evaluating those statements. (See Tr. at 24-26.) The ALJ then discussed each of Plaintiff's impairments at length, noting the treatment Plaintiff received, her clinical findings and symptoms, and her response to treatment. Finally, the ALJ connected these findings to the relevant limitations in Plaintiff's RFC assessment. (See Tr. at 26-27.) For example, in terms of Plaintiff's physical impairments,

12

namely Bechet's disease, fibromyalgia, and asthma, the ALJ found that, "in light of [Plaintiff's] reports of wearing supportive footwear, and her inability to be exposed to bodily fluids, the evidence reasonably supports a finding that [Plaintiff] is limited to work that involves no greater than occasional exposure to slippery or uneven surfaces, and no use of sharp objects or bodily fluids in the workplace." (Tr. at 26.) Notably, these limitations specifically address Plaintiff's complaints of swelling and pain in her hands and feet as well as her higher risk of contracting infectious diseases due to open lesions. (See Tr. at 25.) Although Plaintiff also alleged widespread musculoskeletal pain due to fibromyalgia and arthritis, the ALJ noted that Plaintiff's objective testing and examinations reflected largely unremarkable findings and little to no difficulties with motor functioning or ambulation. (Tr. at 24-26.) Nevertheless, the ALJ also found that Plaintiff required far greater limitations than those opined by the State agency medical consultants. (Tr. at 28.) Chief among this departure was the ALJ's finding that Plaintiff was limited to light work, rather than medium work as the State agency consultants opined, and with a sit/stand option. (Tr. at 28.) Although Plaintiff's treating rheumatologist, Dr. Romero, opined that Plaintiff's "undifferentiated connective tissue disease, associated joint pain, oral ulcers, rashes, fatigue, and joint swelling symptoms would frequently interfere with [her] ability to perform even simple tasks," the ALJ noted that Dr. Romero's clinical exam findings and treatment records "describe [Plaintiff] as a well-appearing individual with no signs of joint swelling, and grossly intact cognitive/neurological functioning," and that her opinion was also inconsistent with the findings of other examiners during the period at issue. (Tr. at 28.) Similarly, the ALJ rejected Ms. Garmon's opinion, which posited that Plaintiff's "pain and anxiety make it impossible for her to perform typical work activities." (Tr. at 28.) In

13

doing so, the ALJ correctly noted that the issue of disability is reserved to the Commissioner, and that Ms. Garmon's opinion, like Dr. Romero's, was inconsistent with her own clinical findings describing Plaintiff as "an alert and oriented individual with an intact gait, normal sensation, and no focal or motor deficits." (Tr. at 28.) Notably, Plaintiff makes no other challenge to the ALJ's consideration of the opinion evidence, and the ALJ's assessment find supporting evidence in the record.

In terms of Plaintiff's mental impairments, the ALJ acknowledged Plaintiff's testimony that her "chronic anxiety symptoms, including panic attacks, fear of leaving the home, and difficulties concentrating." (Tr. at 25.) However, as with Plaintiff's physical symptoms, the ALJ found that Plaintiff's treatment records and other evidence failed to support the extreme limitations Plaintiff alleged. Nevertheless, the ALJ's analysis reveals that he credited Plaintiff's testimony to the maximum extent supported by the record. For example, the ALJ found that, because Plaintiff's "comprehensive mental status exam notes do show [that Plaintiff] displayed 'minor' problems sustaining attention, the evidence supports a finding that [she is] unable to perform work that requires her to maintain a specific pace throughout the day." (Tr. at 27.) The ALJ also determined that, "in light of [Plaintiff's] testimony and this medical evidence [recounting a panic attack,] it is reasonable to find [her] limited to performing work tasks that involve only occasional interaction with the public, and no tandem tasking or work in a team environment." (Tr. at 27.) Turning to the opinion evidence, the State agency psychological consultants opined that Plaintiff could perform simple, routine, repetitive tasks; understand and retain at least simple instructions; maintain concentration, persistence, and pace to stay on tasks for 2-hour periods; tolerate occasional contact with coworkers, supervisors, and the

14

general public; and adapt to change in a nonproduction-oriented workplace. (See Tr. at 104-06.) The consultative psychological examiner posited fewer restrictions, finding that Plaintiff "has minor limitations sustaining attention, . . . no problems interacting and relating with others, . . . moderate problems tolerating the stress associated with day-to-day work activities," and no problems understanding and following instructions. (Tr. at 29.) Although the ALJ found both sets of opined limitations only partially persuasive, he adopted portions of each and described his reasons for doing so in the hearing decision. Overall, the ALJ determined that "[c]onsideration of the record as a whole, including [Plaintiff's] reported activities of daily living, conservative/routine treatment modalities, the longitudinal medical record, and the opinion evidence shows [that Plaintiff's] allegations of disabling symptoms and limitations are not entirely consistent with and supported by the medical evidence and other evidence in the record." (Tr. at 29.) Because Plaintiff identifies no fault in the ALJ's reasoning, and none is apparent from a thorough review of the administrative decision, the Court finds no basis for remand.

B. RFC

Plaintiff's second argument also fails. In challenging her RFC assessment, Plaintiff merely quotes the ALJ's RFC finding in full, cites the definition of an RFC assessment, and concludes with the following:

> Even assuming, as the ALJ noted, that there exists such a job in the national economy with such limitations and that the Dictionary of Occupational Titles does not address some of the limitations contained in the [RFC], the ALJ "provided no explanation as to how those particular activities . . . showed that [s]he could persist through an eight-hour workday." Brown v. Comm'r [of] Soc. Sec. Admin., 873 F.3d 251, 263 (4th Cir. 2017); see also Woods [v. Berryhill], 888 F.3d [686,] 694 [(4th Cir. 2018)] (holding that the ALJ erred in failing to

15

explain how the evidence supported his conclusion that the claimant "could actually perform the tasks required by 'medium work'").

(Pl.'s Br. at 8.) From Plaintiff's citations to Brown and Woods, it appears that she may intend to challenge the ALJ's treatment of Plaintiff's daily activities. However, Plaintiff points to no evidence supporting this argument, and none is apparent from a thorough review of the ALJ's decision.

As the Fourth Circuit explained in Woods, "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Woods, 888 F.3d at 694; see also Lewis v. Berryhill, 858 F.3d 858, 868, n.3 (4th Cir. 2017) ("The ALJ points to Lewis' ability to perform incremental activities interrupted by periods of rest, such as 'driv[ing] short distances of up to 30 miles, shop for groceries with the assistance of her mother or roommate, handle her finances, and watch television.' The ALJ's conclusion that Lewis' activities demonstrate she is capable of work is unsupported by the record.") (citation omitted); Brown, 873 F.3d at 263; Fletcher v. Colvin, No. 1:14CV380, 2015 WL 4506699 at *5-8 (M.D.N.C. Jul. 23, 2015).

In the present case, the ALJ's RFC discussion barely mentions Plaintiff's daily activities, other than her alleged inability to drive. (Tr. at 25.) However, the ALJ's discussion of Plaintiff's mental impairments at step three of the sequential analysis discusses Plaintiff's daily activities in the context of evaluating her mental limitations. When considering Plaintiff's ability to understand, remember, and apply information, for example, the ALJ recounted Plaintiff's Function Report, in which she "acknowledged being capable of performing a variety of tasks that require on to understand, recall[,] and apply learned information, such as driving a car, shopping for necessities in stores and online, paying bills, managing a bank account, and

16

preparing daily meal." (Tr. at 22.) Despite these findings, the ALJ appears to have given Plaintiff the benefit of the doubt in finding her moderately impaired in this area of functioning. (Tr. at 22.) He then found that Plaintiff's restrictions in understanding, remembering, and applying information required RFC limitations to "mak[ing] workplace decisions and remember[ing] and apply[ing] commonsense understanding to carry out simple and detailed instructions and tasks consistent with occupations that can be learned over a period up to and including 6 months in a setting that is goal-oriented." (Tr. at 24.)

Similarly, in determining Plaintiff's ability to get along with others, the ALJ acknowledged Plaintiff's anxiety symptoms, including panic attacks and fear of leaving the house, but he also noted Plaintiff's assertions that she gets along with friends, family members, and neighbors and has never had problems getting along with others in the workplace. (Tr. at 22.) Here again, the ALJ appears to have given Plaintiff the benefit of the doubt in finding her moderately impaired in interacting with others and later including significant social restrictions in Plaintiff's RFC assessment. (Tr. at 22, 24.) Finally, in finding Plaintiff moderately limited in adapting and managing herself, the ALJ noted that, despite her chronic anxiety symptoms, Plaintiff "is capable of shopping, cooking and feeling herself and her children, arriving on time for scheduled appointments, and maintaining good hygiene and grooming." (Tr. at 23.) The ALJ later accounted for Plaintiff's adaptive limitations by limiting her to "only occasional changes in the work setting." (Tr. at 24.) Nothing in the ALJ's decision, at step three or elsewhere, suggests that he failed to qualify Plaintiff's daily activities or that he used them to overstate Plaintiff's functional abilities, as in Woods and Brown. Accordingly, the Court finds no basis for remand.

17

Case 1:21-cv-00736-CCE-JEP   Document 16   Filed 08/19/22   Page 17 of 18

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion to Reverse the Decision of the Commissioner [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 18th day of August, 2022.

/s/ Joi Elizabeth Peake
United States Magistrate Judge